

**Paul Sala, Bankruptcy Judge**

# IN THE UNITED STATES BANKRUPTCY COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: | Chapter 11 Proceedings |
| REGENCY PARK CAPITAL 2011, INC. dba SUPER 8 GOODYEAR, | No. 2:15-bk-15280-PS |
| Debtor, | **ORDER CONFIRMING SARAH SINGH'S PLAN OF LIQUIDATION DATED AUGUST 16, 2016, AS MODIFIED** |

Creditor, equity security holder, and plan proponent Sawaranjit Sarah Singh ("Mrs. Singh" or the "Proponent") filed her Plan of Liquidation Dated August 16, 2016 and modifications thereto on December 18, 2018 [Doc. 430] and January 17, 2019 [Doc. 445].

Status hearings on confirmation of the Plan of Liquidation were held at different times during 2016 through 2018; and a trial was held on January 28, 2019 and February 13, 2019.

Based on the entire record in this case, **THE COURT FINDS AND CONCLUDES** as follows:

1.      The Debtor owns and operates a Super 8 Motel (the "Motel").  Mrs. Singh and Ranjit Singh ("Mr. Singh"), who are divorcing, have owned all of the Debtor's stock since its formation.  Since the petition date, the Debtor and Motel have been managed by Mr. Singh.

2.      On August 16, 2016, Mrs. Singh filed her Plan of Liquidation Dated August 16, 2016 [Doc 176], which calls for an auction sale of the Motel, with Jaswant Toor serving as the stalking horse.

3. Mr. Toor has made an opening bid for the Motel of $3.125 million, has put up the required $250,000 deposit, and has sufficient cash and liquid resources to pay the bid price at closing.

4. On December 18, 2018 [at Doc. 430] and again on January 17, 2019 [at Doc. 445], Mrs. Singh filed modifications (the "Modifications") to the Liquidating Plan providing, among other things, for the Liquidating Agent to take over control and management from Mr. Singh on the Plan's Effective Date. The Plan of Liquidation Dated August 16, 2016, as modified by the Modifications, is hereafter referred to as the "Plan."

5. There are few creditors in this case. The primary creditor is the mortgage claimant, Extensia. Extensia cast a ballot in favor of the Plan and has confirmed that the Modifications do not impact its vote in favor of the Plan.

6. A trial on confirmation of the Plan was held on January 28, 2019 and February 13, 2019. Mr. Singh was the only objector to the Plan at the time of trial.

7. Mr. Singh and Mrs. Singh filed a Joint Pretrial Statement [Doc. 447]. Except for the assertion that the Plan satisfied the 11 U.S.C. §1129(a)(8) with respect to Class 5 Equity Interests, the court adopts the uncontested facts listed therein and hereby incorporates them by reference as if fully set forth herein.

8. The requirements for confirmation of the Plan set forth in 11 U.S.C. §1129 have been satisfied.

9. The Plan complies with the applicable provisions of title 11.

10. The Proponent has complied with the applicable provisions of title 11.

11. The Plan has been proposed in good faith and not by any means forbidden by law.

12. Except as provided in the Plan, any payment to be made for services or for services and expenses in or in connection with the case, or in connection with the Plan and incident to the case, is subject to the approval of the Court as reasonable.

13.     The Proponent of the Plan has made any disclosures required by 11 U.S.C. §1129(a)(5).

14.     With respect to each impaired class of claims or interests, each holder of a claim or interest of such class has accepted the Plan or will receive under the Plan on account of such claim or interest property of a value, as of the Plan's Effective Date, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under chapter 7 of title 11 on such date. The Plan therefore satisfies the requirements of 11 U.S.C. §1129(a)(7).

15.     With respect to each class of claims or interest that is entitled to vote on the Plan, either (i) such class has accepted the Plan; (ii) such class is not impaired under the Plan; or (iii) the Plan does not discriminate unfairly, and is fair and equitable with respect to such class. Specifically, with respect to the Class 5 Equity Interests of which Mr. Singh is an interest holder, the Plan does not discriminate unfairly and is fair and equitable to that class within the meaning of, and in compliance with, 11 U.S.C. §1129(b).

16.     There are no claims of any kind specified in sections 507(a)(4), 507(a)(5), 507(a)(6), or 507 (a)(7), or 507(a)(8). The Plan satisfies the requirements of 11 U.S.C. §1129(a)(9).

17.     The Plan satisfies the requirements of 11 U.S.C. §1129(a)(10), as at least one class of claims that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by an insider.

18.     The Plan satisfies the requirements of 11 U.S.C. §1129(a)(11), as confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, except as proposed in the Plan.

19.    The Plan satisfies the requirements of 11 U.S.C. §1129(a)(12), as all fees payable under section 1930 of title 28 have been paid or the Plan provides for payment of all such fees on the Plan's Effective Date.

20.    The provisions of Bankruptcy Code §1129(a)(6), (13), (14), and (15) do not apply here.

21.    Notice of the Modifications was provided to interested parties.  The Modifications do not negatively affect the treatment afforded any class of creditors' claims and no creditors have objected to them.  The Plan as modified meets the requirements of 11 U.S.C. §1122 and 1123.

22.    The Proponent has complied with 11 U.S.C. §1125 with respect to the Plan as modified.

23.    Eric Haley is a reasonable and appropriate choice as the Plan's Liquidating Agent, and his $300 per hour rate is reasonable and appropriate.

24.    Under Mr. Singh, the Motel's performance trailed the national industry averages, and the Debtor's financials are not in conformity with industry norms.

25.    The Plan's provisions calling for the Liquidating Agent to take over control and management from Mr. Singh on the Plan's Effective Date are appropriate.

26.    The court's other findings of fact and conclusions of law made in open court on March 13, 2019 are hereby incorporated by reference as if fully set forth herein.

Good cause appearing, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

A.    The Plan, as modified by the Modifications and a copy of which is attached hereto as Exhibit A, is hereby confirmed.

B.    The Plan's Effective Date shall occur fourteen (14) calendar days after entry of this Order.

C.     Eric Haley's appointment as the Liquidating Agent is hereby approved, and his $300 hourly rate is also approved.  In accordance with the Plan, the Liquidating Agent also shall be entitled to reimbursement of actual out-of-pocket costs.

D.     The Liquidating Agent shall take over control and operation of the Debtor and the Motel on the Plan's Effective Date, including taking possession of all of the Debtor's real property, personal property, fixtures, equipment, and records.  The Debtor's current management, under Mr. Singh, shall cooperate and assist with the orderly transfer of such control and operation, including the turnover to the Liquidating Agent of all of the Debtor's cash, funds, bank accounts, accounting and business records (or copies thereof), insurance policies, and a list of all contractors and vendors used by the Debtor.

E.     From and after the Effective Date, the Liquidating Agent is authorized to perform and provide services and take actions appropriate to operate, manage, maintain, and preserve the Motel and other Property.[1]  The Liquidating Agent shall (i) make all personnel decisions, including the hiring or firing of employees (including any of the Debtor's existing officers or Motel supervisors); (ii) oversee and approve all disbursements; and (iii) oversee and make all property management decisions.

F.     The Liquidating Agent is hereby fully authorized to liquidate, on behalf of the Debtor, the Property, including the Motel, in accordance with the Plan.  ////

/// ///

/// ///

/// ///

/// ///

/// ///

/// ///

/// ///

---

[1] Except as otherwise defined herein, all capitalized terms shall have the same meanings set forth in the Plan.

- 5 -

G. The Liquidating Agent may employ and retain a property manager or any person or firm necessary to operate, manage, maintain, and preserve the Motel or to employ such other persons as the Liquidating Agent deems necessary to assist in the discharge of the Liquidating Agent's duties.

H. The Liquidating Agent is authorized to issue demands upon public utilities which provides services to the Debtor to transfer billing accounts, or to continue to utilize the same accounts but with changes of billing addresses to the Liquidating Agent, for such services together with any deposits held by the utility to the exclusive control of the Liquidating Agent.

I. The Liquidating Agent is authorized to issue demands in the name of the Liquidating Agent and Debtor/Motel upon the U.S. Postal Service and any private mail service providers to gain exclusive possession and control of such postal boxes or other delivery points as may have been used by the Motel for the receipt of mail.

J. The Liquidating Agent is authorized to request assistance of law enforcement officials, or hire private security services, when taking possession of the Motel or at any time thereafter during the discharge of his duties if, in the Liquidating Agent's opinion, such assistance is necessary to preserve the peace or otherwise.

K. The Debtor's current management, under Mr. Singh, shall file monthly operating reports for all periods through the Effective Date.

L. The Liquidating Agent shall file all post-confirmation quarterly reports.

M. The Liquidating Agent shall not be responsible for filing any tax returns for periods prior to his appointment. Further, the Liquidating Agent shall not be responsible for filing any tax returns for 2019 or thereafter unless (i) agreed to by Mr. Singh, Mrs. Singh, and the Liquidating Agent and (ii) the needed records have been supplied to the Liquidating Agent.

N.        Unless otherwise provided by law, the reversal or modification of this Order on appeal shall not affect the validity of the Plan, or any agreement or action authorized by this Order or under the Plan that occurs or is taken by the Liquidating Agent or any person or entity acting in good faith, whether or not that person or entity knows of the appeal, unless this Order is stayed pending appeal.

O.        The Court shall retain jurisdiction of the Cases pursuant to, and for the purposes of, 11 U.S.C. §§ 105 and 1127, and for the purposes set forth in the Plan.

P.        In the event any party violates the terms of this Order, the Liquidating Agent may petition this Court to issue an Order to Show Cause why such party should not be found to be in contempt and impose appropriate sanctions and penalties.

Q.        In the event of any inconsistency between the terms of the Plan and this Order, the terms of this Order shall control.

**ORDERED, SIGNED AND DATED ABOVE.**

COPY of the foregoing emailed
March 14, 2019 to:

Keith M. Knowlton, Esq.
Keith M. Knowlton, LLC
9920 S. Rural Road, Ste. 108
PMB#132
Tempe, AZ 85284-4100
keithknowlton@msn.com
Attorneys for Ranjit Singh

By  /s/ *Sharon Kagley*

# Exhibit A

Brian N. Spector - 010112
**SCHNEIDER & ONOFRY, P.C.**
3101 North Central Avenue, Suite 600
Phoenix, Arizona 85012-2658
Telephone: (602) 200-1295
Fax: (602) 230-8985
E-mail: bspector@soarizonalaw.com
minute-entries@soarizonalaw.com

John T. Gilbert Esq.
**ALVAREZ & GILBERT, PLLC**
14500 N. Northsight Blvd., Suite 216
Scottsdale, AZ 85260
Co-Counsel for Sawaranjit Sarah Singh

**IN THE UNITED STATES BANKRUPTCY COURT**

**IN AND FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In Re:<br><br>REGENCY PARK CAPITAL 2011, INC. dba SUPER 8 GOODYEAR,<br><br>Debtor, | Chapter 11 Proceedings<br><br>No. 2:15-bk-15280-PS<br><br>**PLAN OF LIQUIDATION DATED AUGUST 16, 2016 AS MODIFIED** |

## INTRODUCTION

Pursuant to 11 U.S.C. § 1125, Sawaranjit Sarah Singh ("Mrs. Singh" or "Plan Proponent") submits this Plan of Liquidation Dated August 16, 2016 (referred to herein as the "Plan") for the resolution of the claims and interests of creditors and equity holders of Regency Park Capital 2011, Inc., Debtor and Debtor-In-Possession ("Debtor"). All creditors and parties in interest should refer to the Disclosure Statement sent along with this Plan for a discussion of the Debtor's history, business, properties, risk factors, and for a summary and analysis of the Plan and related matters. All creditors are encouraged to read the Plan, the Disclosure Statement and the related materials in their entirety before voting to accept or reject the Plan. Subject to the restrictions on modifications set forth in § 1127 of the Bankruptcy Code, Bankruptcy Rule 3019,

and the Plan, the Plan Proponent expressly reserves the right to alter, amend, modify or revoke this Plan, one or more times, before the Plan's substantial consummation.

## ARTICLE I: DEFINITIONS, RULES OF CONSTRUCTION, AND COMPUTATION OF TIME

A. <u>Defined Terms</u>.  For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms used in this Plan shall have the meanings ascribed to them below.

1.       <u>Administrative Expense Claims</u> means claims and expenses which are allowed pursuant to § 503(b) of the Bankruptcy Code and which are entitled to priority pursuant to § 507(a)(1) of the Bankruptcy Code.

2.       <u>Allowed Claim</u> means a Claim (a) with respect to which a Proof of Claim has been filed with the Court within the applicable period of limitation fixed by the Federal Rules of Bankruptcy Procedure, Rule 3003, or (b) scheduled in the list of Creditors prepared and filed with the Court pursuant to Federal Rules of Bankruptcy Procedure, Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, and in either case, as to which no objection to the allowance thereof has been filed within any applicable period of limitation fixed by Federal Rules of Bankruptcy Procedure, Rule 3007, the Plan, an order of the Court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal and as to which no appeal is pending.  An Allowed Claim shall not include unmatured or post-petition interest unless otherwise provided in the Plan.

3.       <u>Allowed Secured Claim</u> means a Claim that is both an Allowed Claim and a Secured Claim.

4.       <u>Allowed Unsecured Claim</u> means a Claim that is both an Allowed Claim and an Unsecured Claim.

5.       <u>Avoidance Actions</u> means a lawsuit commenced pursuant to Bankruptcy Code §§544, 547, 548, 549, and/or 550 to recover for the benefit of the Estate, a transfer of property to a third party.

6.       <u>Ballot</u> means the ballot for accepting or rejecting the Plan which will be distributed to holders of Claims in Classes that are impaired under this Plan and are entitled to vote on this Plan.

7.       <u>Bankruptcy Code</u> means the Bankruptcy Reform Act Of 1978,

- 2 -

sometimes referred to as the Bankruptcy Code Of 1978, as contained in Title 11 U.S.C.A. § 101, et seq., and all amendments thereto.

8.     <u>Bankruptcy Court</u> means the United States Bankruptcy Court for the District of Arizona, Phoenix Division, or any other court that exercises jurisdiction over all or part of the Bankruptcy Case, including the United States District Court for the District of Arizona to the extent that the reference of all or part of the Bankruptcy Case is withdrawn.

9.     <u>Bankruptcy Rules</u> means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075 and the local rules of Court, as applicable during the term of the Bankruptcy Case.

10.     <u>Bankruptcy Case</u> means the above-captioned Chapter 11 case.

11.     <u>Business Day</u> means every day except Saturdays, Sundays, and holidays observed by the Bankruptcy Court.

12.     <u>Calendar Day</u> means every day, including Saturdays, Sundays, and holidays.

13.     <u>Cash</u> means any legal tender of the United States.

14.     <u>Cash Collateral</u> means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in § 552(b) of the Bankruptcy Code, whether existing before or after the commencement of a case under Title 11 of the Bankruptcy Code.

15.     <u>Cash Collateral Agreement</u> means the Debtor's Cash Collateral Agreement with Secured Creditor Extensia Financial, which was approved by the Court after notice and hearing.

16.     <u>Causes of Action</u> means any and all actions, proceedings, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims (as defined in Section 101(5) of the Bankruptcy Code), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise.

17.     <u>Chapter 11</u> means sections in the Bankruptcy Code 11 U.S.C. § 101, et seq., Public Law 95-598, effective October 1, 1979, as amended, unless otherwise specified.

18.     <u>Claim</u> means a right of any Person to (1) payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (2) an equitable remedy for breach of performance if such breach gives rise to a right to payment,

whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

19.     Claimant means a holder of a Claim.

20.     Class means one or more creditors grouped together as defined herein. The Plan is intended to deal with all Claims against the Debtor of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Court pursuant to § 502(a) of the Bankruptcy Code. However, only those Claims allowed pursuant to § 502(a) of the Bankruptcy Code will receive payment under the Plan.

21.     Collateral means property which is pledged as security for the satisfaction of a debt.

22.     Confirmation means the formal approval of the Bankruptcy Court of a Plan of Reorganization.

23.     Confirmation Date means the date upon which the Confirmation Order is entered by the Court.

24.     Confirmation Hearing means the hearing regarding confirmation of the Plan conducted by the Bankruptcy Court pursuant to Bankruptcy Code § 1128, including any adjournment or continuation of that hearing from time to time.

25.     Confirmation Order means the Final Order of the Court determining that the Plan meets the requirements of Chapter 11 of the Bankruptcy Code and is entitled to Confirmation.

26.     Creditor means a person or entity holding a Claim against the Debtor for the debts, liabilities, demands or Claims of any character whatsoever, as defined in § 101(4) of the Bankruptcy Code.

27.     Debtor means Regency Park Capital 2011, Inc. dba Super 8 Goodyear.

28.     Disclosure Statement means the Disclosure Statement In Support of the Plan as it may be amended or supplemented.

29.     Disputed Claim means every Claim: (a) that is scheduled by the Debtor as disputed, contingent, or unliquidated; and/or (b) that is not an Allowed Claim.

30.     Effective Date means the date that is defined in Plan §5.1.

31.     Equity Interest or Interest Holder means the interest held by the Debtor.

32.     Estate means the bankruptcy estate of the Debtor created under Bankruptcy Code § 541.

- 4 -

33.    Estate Claim means any and all of the Debtor's and the Estate's claims and Causes of Action under applicable non-bankruptcy and bankruptcy law (the "Estate Claims"), including (without limitation) Avoidance Actions.

34.    Executory Contract means every unexpired lease and other contract which is subject to being assumed or rejected under Bankruptcy Code § 365.

35.    Exhibit means any document attached to either this Plan or attached as an appendix to the Disclosure Statement.

36.    Final Order means an order of the Bankruptcy Court which, not having been reversed, modified or amended and not being stayed and the time to appeal from which or to seek review or rehearing of which having expired, and no such appeal, review, certiorari or rehearing is pending, has become conclusive of all matters adjudicated thereby and in full force and effect.

37.    Impaired/Impaired Class means, under § 1124 of the Bankruptcy Code, a Class Of Claims is impaired under a Plan unless, with respect to each Claim of such Class: (i) it is paid in full on the Effective Date of the Plan; (ii) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder to such Claim; or (iii) all defaults are cured, the original maturity of the Claim is reinstated and the Claim is otherwise treated as provided in clause (ii) above.

38.    Interest means the equity rights of the Debtor.

39.    Lien means a lien as described in Section 101(37) of the Bankruptcy Code except for a lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, or 549 of the Bankruptcy Code.

40.    Motel means all of the Debtor's Real Property and Personal Property located at 840 N. Dysart Road in Goodyear, Arizona.

41.    Person means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in Section 101(27) of the Bankruptcy Code), or other entity (including, without limitation, the Creditors' Committee).

42.    Petition Date means December 1, 2015, the date on which the Debtor filed its voluntary petition.

43.    Personal Property means all personal property owned by Debtor.

44.    Plan means this Plan of Reorganization propounded by Plan Proponent and every modification thereof.

45.    Plan Confirmation means the entry by the Court of an order confirming the Plan.

- 5 -

46.     <u>Property</u> means all real and personal Property (individually or as a whole) of the Estate of the Debtor as previously or hereafter determined by Final Order of a court of competent jurisdiction and/or as defined in § 541 of the Bankruptcy Code, including, but not limited to, any and all claims or causes of action in favor of the Debtor against third parties (except as otherwise provided herein).

47.     <u>Proponent</u> means the Person who is proposing the Plan of Reorganization.

48.     <u>Pro Rata</u> means proportionally, so that the ratio of the consideration distributed on account of an Allowed Claim in the Class (or sub-class) and consideration distributed on account of all Allowed Claims in the Class (or sub-class) is the same as the ratio of the Allowed Claims in the Class (or sub-class).

49.     <u>Real Property</u> means all real property or real estate.

50.     <u>Scheduled</u> means any Claim or Interest, the status, priority and amount, if any, of such Claim or Interest as set forth in the Schedules.

51.     <u>Schedules</u> means the schedules of assets and liabilities and the statement of affairs filed in the Chapter 11 case by the Debtor, as such schedules or statement has been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

52.     <u>Secured Claim(s)</u> means any Claim, other than a Tax Claim, secured by Property of the Debtor under a duly perfected security interest, to the extent of the value of the Collateral (security), as determined in accordance with § 506 of the Bankruptcy Code.

53.     <u>Secured Creditor(s)</u> means any Creditor(s), other than taxing entities, who holds a Lien, security interest or other encumbrance which has been properly perfected as required by law with respect to Property owned by the Debtor.

54.     <u>Unsecured Claim(s)</u> means any Claims not secured by collateral of the Estate.

55.     <u>Unsecured Creditor(s)</u> means any creditor(s) of the Debtor holding Unsecured Claims of any character whatsoever, except Claims entitled to priority pursuant to § 507 of the Bankruptcy Code.

B.     <u>Undefined Terms</u>.  Terms and phrases, whether capitalized or not, that are used and not defined herein, but are defined by the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code.  Terms and phrases, whether capitalized or not, not defined herein and not defined by the Bankruptcy Code, but which have been defined by motions and orders filed in this Chapter 11 case have the meaning ascribed to them in such motions and orders.

C.     <u>Rules of Interpretation.</u>  For purposes of this Plan: (a) any reference in the

- 6 -

Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that it shall be substantially in such form or substantially on such terms and conditions; (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (c) unless otherwise specified, all references in the Plan to Sections, Articles, Appendices, Schedules, and Exhibits are to the Sections, Articles, Appendices, Schedules, and Exhibits of or to the Plan; (d) the words "herein" or "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (e) the headings and captions used in this Plan are for convenience and reference only and are not intended to be a part of or affect the interpretation of the Plan and shall not limit or otherwise affect the provisions hereof; (f) words denoting the singular number shall include the plural number and vice versa; (g) words denoting one gender shall include the other gender; and (h) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

D. <u>Computation of Time</u>. Excepted as otherwise stated in the Plan, in computing any period of time prescribed by or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II: DESCRIPTION OF ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS

Class 1 Administrative Expense Claims largely consist of the fee claims of Estate Professionals but it also may include Allowed Claims of those making a substantial contribution to the case under Code §503(b)(3)(D) and (b)(4).

The Bankruptcy Court must approve all requests for the payment of professional compensation and expenses to the extent incurred on or before the Confirmation Date. Each Professional Person requesting compensation or reimbursement of expenses in the case pursuant to Bankruptcy Code Sections 327, 328, 330, 331, 503(b) or 1103 shall file an application for allowance of final compensation and reimbursement of expenses not later than twenty (20) days after the Confirmation Date.

The Debtor has employed Parker Schwartz, PLLC ("Parker Schwartz") as General Counsel for the Debtor-in-Possession. Parker Schwartz received a $15,000.00 pre-petition retainer

from the Debtor. Additionally, the Cash Collateral Agreement provides a budget of $7,000 per month to be "carved out" to be used for the payment of fees to Parker Schwartz. Total approved fees and costs were $52,902.52 for services rendered through March 17, 2016. Of that, the Plan Proponent understands that not less than $45,000 has been paid, leaving approximately $7,902.52 due as of 6/30/16. The Debtor is currently paying $3,000 per month to satisfy the balance of the approved fees and costs.

The Debtor has retained the services of Law & Reed, CPAs to serve as accountants for the Estate. Its employment has been approved. The Court has determined that fees can only be paid to Law & Reed after a duly noticed fee application has been filed. The Cash Collateral Agreement provides a monthly "allowance" of $500 to cover accounting fees and costs. Additionally, the Court has approved the employment of Lela Lawless as Auditor. The Cash Collateral Agreement provides for a $20,000 budget to cover the costs of the Audit.

The Plan Proponent understands that (i) the Debtor has paid post-petition taxes to the extent any have become due; and (ii) the Debtor does not believe that it is indebted to the Office of the United States Trustee for any post-petition quarterly fee obligations. To the extent that such fees are unpaid, they shall be paid no later than the Effective Date.

There are no scheduled or filed priority claims.

## ARTICLE III: CLASSIFICATION AND TREATMENT OF IMPAIRED CLAIMS AND INTERESTS

Holders of all claims and interests shall be bound by the provisions of this Plan and are hereby classified below:

**A. Classes of Claims and Interests.** The Plan divides the Creditors and Equity Interests into classes. The classes under the Plan are described below:

**1. Class 1: Creditors Holding Administrative Expense Claims:** All Allowed Administrative Expense Claims will be paid on the Plan's Effective Date or pursuant to an agreement reached between the Debtor and the Claimant or upon an Order approving the fees, if funds are present.

Any unpaid (i) post-petition taxes or (ii) fees payable to the Office of the United States Trustee shall be paid no later than the Effective Date.

Administrative Expense Claims are unimpaired.

**2. Class 2: Chase Secured Claim**: According to a 3/10/16 Proof of Claim filed in the Case, JP Morgan Chase Bank ("Chase") is owed approximately $6,611.23 secured by a Lien on a 2007 350R Mercedes (the "Vehicle"). According to the Debtor, the Vehicle is worth approximately $12,000. The Plan Proponent understands that monthly post-petition payments have been made to Chase. The remaining Allowed Claim of Chase shall be paid in full on the Effective Date. Chase is impaired.

**3. Class 3: Farmers' Group Credit Union aka Extensia Financial ("Extensia"):** Class 3 consists of the Allowed Claim of Extensia in the amount of approximately $2,177,000 secured by a Lien on a Super 8 Motel consisting of all of the Debtor's Real Property and Personal Property located at 840 N. Dysart Road in Goodyear, Arizona (the "Motel"). The Debtor is currently making adequate payments to Extensia pursuant to the Cash Collateral Order and intends to continue to make those payments through the Effective Date. Extensia's Allowed Claim shall be paid in full from a sale of the Motel, as discussed in Article V *infra,* with such sale to occur between 45 days and 90 days after entry of the Confirmation Order. Extensia's Lien shall attach to the sale proceeds, which shall be sufficient to fully pay Extensia's Allowed Claim, including any post-petition interest. The precise amount payable to Extensia will be calculated to include all

accrued interest and all other amounts owing to Extensia pursuant to its loan documents through and including the payoff date. Extensia is impaired.

**3A. Class 3A: Executory contracts:**

Debtor is lessee on a lease with APS for a lighting contract on the Motel that is designed to save energy. Debtor is current on its obligations to APS. Except as otherwise agreed, the Debtor will assume will assume and assign its rights and obligations under the Agreement to the purchaser of the Motel.

Debtor is the franchisee on an executory contract (the "Franchise Agreement") with Super 8 for the Motel's operation as a Super 8 Motel. The Franchise Agreement provides a procedure for a Motel purchaser to obtain Super 8's consent to an assignment. Debtor is current on its obligations to Super 8 and will assume and assign its rights and obligations under the Franchise Agreement to the purchaser of the Motel.

**4. Class 4: Unsecured Claims:**

Class 4 consists of the holders of Allowed Unsecured Claims. After payment in full to the holders of Allowed Administrative Expense Claims, and by not later than five (5) business days after the closing of the Motel sale, each Class 4 Allowed Unsecured Claim shall be paid in full. Class 4 claims are impaired.

**5. Class 5 Equity Interests:** Class 5 consists of all holders of Equity Interests in the Debtor (Ranjit Singh and Mrs. Singh). Absent an agreement between the Singhs to the contrary, the court's ruling in the Divorce Action shall determine their relative interests in the Debtor and the disposition between them of the funds remaining after payment of all Allowed Claims. Accordingly, all funds remaining after the Allowed Claims in Classes 1 through 4 have been fully paid shall be distributed to or for the benefit of the holders of Allowed Class 5 Equity Interest in

- 10 -

accordance with either (i) the court's orders[1] in the Divorce Action or (ii) the written agreement of Mrs. Singh and Ranjit Singh.

Holders of Class 5 Equity Interests are impaired.

## ARTICLE IV:  ACCEPTANCE OR REJECTION OF THE PLAN

A. <u>Classes Entitled to Vote</u>.  Classes which are impaired are entitled to vote.  An Impaired Class of Claims shall have accepted the Plan if, of the Claims actually voting, the holders (other than any holder designated under §1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims and more than fifty (50%) in number of the Allowed Claims have voted to accept the Plan.

B. <u>Cramdown.</u>  The <u>Plan</u> Proponent may request Confirmation of the Plan, as it may be modified from time to time, under § 1129(b) of the Bankruptcy Code even if all Impaired Classes do not accept the Plan.

## ARTICLE V:  IMPLEMENTATION OF THE PLAN

The means of execution of the Plan are and will be as follows:

**5.1 <u>Plan Effective Date</u>**.  The "Effective Date," as used in this Plan, means the first Business Day that is fourteen (14) calendar days after the later of the date on which (a) the Confirmation Order has been entered and (b) no stay of the Confirmation Order is in effect; provided, however, the Effective Date may occur on such other date as agreed to in writing by the Debtor, Extensia, and the Plan Proponent.  Notwithstanding the foregoing, if the Confirmation

---

[1] That includes (without limitation) an order directing the transfer of funds to an interest-bearing account in Canada pending a substantive order by the court in the Divorce Action determining the

- 11 -

Order is not a Final Order, the Debtor and the Plan Proponent may waive the requirement that the Confirmation Order shall have become a Final Order.

**5.2** **Source of Funding**. Payments to Allowed Claims of Classes 1-4 and distributions to Class 5 will be funded from (i) Cash on hand; (b) the Net Proceeds from the sale (private or public) of the Property of any kind belonging to the Debtor and/or its bankruptcy estate, including (without limitation) the Motel and the Vehicle (collectively, the "Property"); and (c) Stockholder Loans. (Note: "Net Proceeds," as used in this Plan, shall mean an amount equal to the gross sale proceeds less the associated sale costs, including (without limitation) any auctioneer's fees, brokers fees and/or real property tax liability of any kind arising out of or in connection with such sale.)

**5.3** **Stockholder Loans.** If and to the extent needed to timely meet any Plan payment obligations, either of the holders of Equity Interests may, but shall not be obligated to, make short-term loans to the Debtor (the "Stockholder Loans"). Any Stockholder Loans shall be non-interest bearing and shall be re-paid from the Net proceeds of the Motel sale remaining after payment of Extensia's Allowed Claim balance.

**5.4** **Liquidating Agent**. On the Effective Date, Eric M. Haley (or, if unwilling or unable to serve, such other Person as the Debtor and/or Plan Proponent recommend and the Bankruptcy Court approves) shall be immediately appointed Liquidating Agent. The Liquidating Agent is hereby authorized to liquidate on behalf of the Debtor the Property, including the Motel, in accordance with this Plan and to oversee and operate and the Motel pending its sale. Without limitation, the Liquidating Agent shall be fully empowered and authorized (without further order of the Bankruptcy Court), to market for sale and/or to sell and/or dispose of the Property, and shall

disposition of the funds.

have the power and authority (without the need for a further hearing or order of the Bankruptcy Court) to execute all contracts of sale and other documents necessary to effectuate the sale of Property. With respect to its authority to oversee and operate the Motel pending its sale, the Liquidating Agent shall, among other things, (i) make all personnel decisions, including the hiring or firing of employees (including, without limitation, any Motel supervisors or officers of the Debtor who are on payroll); (ii) oversee and approve all disbursements; and (iii) oversee and make all property management decisions.

The Liquidating Agent also shall take any such other actions as are needed to assist the Debtor in complying with this Plan, including (i) selling the Property; (ii) making Plan distributions to creditors; and (iii) winding down operations. This includes, without limitation, all of the actions described in Sections 5.5, 5.6 (including 5.6.1-5.6.10), and 5.7 below. As compensation for his services, the Liquidating Agent shall be entitled to receive from the Debtor a fee of $300.00 per hour plus reimbursement of actual out-of-pocket costs. If and to the extent necessary to perform any tasks called for by the Plan, the Liquidating Agent shall be made an officer of the Debtor.

**5.5 <u>Sale of Vehicle</u>**. The Vehicle is listed by the Debtor as having a value of approximately $12,000, and Chase asserts (in its proof of claim) that it has a value of $10,461. The Vehicle shall be sold on an arms-length basis any time after entry of the Confirmation Order without further court order, and the Net Proceeds therefrom shall be used to fund the Plan.

**5.6 <u>Sale of the Motel</u>**. Jaswant Singh Toor (the "Stalking Horse Bidder") has provided a letter of intent to purchase the Motel for the sum of $3.125 million, a copy of which is attached as Exhibit C to the Disclosing Statement. (the "Stalking Horse Bidder"). Jaswant Singh Toor (or, if he is unwilling or unable to serve, such other Person as the Plan Proponent recommends and the

Bankruptcy Court approves) shall serve as the "Stalking Horse Bidder." Prior to the Plan confirmation hearing, the Stalking Horse Bidder shall deposit the sum of $250,000 (the "**Deposit**") into an escrow account (the "**Segregated Account**") with a licensed local escrow agent that shall be opened for the purpose of concluding a sale of the Motel. The Motel shall be sold free and clear of all liens; provided, however, that (i) any such liens shall attach to the sale proceeds and (ii) the sale price must be sufficient to fully satisfy all liens. The Debtor shall contact other parties the Debtor (including its officers and other agents) believes may potentially be willing, qualified, and financially able to consummate a purchase of the Motel. The Debtor may distribute an information package to any such parties with such materials as the Debtor deems appropriate under the circumstances. The Debtor, Plan Proponent, and/or Court shall incorporate such additional safeguards and procedures as are needed to give the Stalking Horse and other interested parties appropriate access to information and opportunity to conduct due diligence.

**5.6.1** The court shall schedule an auction sale (the "**Auction Sale**") of the Motel not later than 45 days or greater than 90 days after entry of the Confirmation Order. Any prospective bidder other than the Stalking Horse Bidder (each a "**Potential Bidder**") that wishes to participate in the bidding process for the Motel must, no later than **ten calendar days prior to the Auction Sale date at 5:00 p.m. (Prevailing Arizona Time)** (the "**Bid Deadline**"):

a.  submit a bid (calling for payment in cash at closing) in an initial amount equal to the sum of at least (i) $3,125,000 plus (ii) an overbid amount of $50,000;

b.  agree to follow the procedure for obtaining Super 8's consent to the Franchise Agreement and, if it is the Winning Bidder, assume the obligations under, and accept an assignment of, the Franchise Agreement.

c.     make a good faith Cash deposit in the form of a cashier's check or wire transfer, in the amount of $250,000 (the "**Bid Deposit**") into a segregated, interest-bearing escrow account (the "**Segregated Account**") that shall be opened by the Debtor for this purpose. The Bid Deposit shall immediately become non-refundable and will be credited toward the purchase consideration if and when the transaction with the Potential Bidder making such deposit is approved by the Court as the winning bid (the "**Winning Bid**" and the "**Winning Bidder**") at the Auction Sale hearing and such transaction is closed. If a Potential Bidder's bid is not approved as the Winning Bid or the Back-Up Bid at the Sale Hearing, the Bid Deposit of such bidder, plus accrued interest, if any, will be returned to such bidder within three (3) business days after the conclusion of the Sale Hearing.

d.     provide written evidence of its financial ability to fully and timely complete the purchase of the Motel.

**5.6.2**  If a Potential Bidder complies with all the requirements described in paragraph 5.6.1 above (including the Bid Deposit) by the Bid Deadline, the Debtor, in consultation with the Plan Proponent, will determine whether (i) the Potential Bidder has demonstrated the legal qualification and financial ability to consummate the proposed transaction, (ii) is reasonably likely to be able to and willing to consummate the contemplated sale, and (iii) has otherwise satisfied all of the requirements described in paragraph 2, above. If so, the Debtor shall designate the Potential Bidder as a "**Qualified Bidder**" and such bid as a "**Qualified Bid**." The Debtor shall (a) promptly notify the Stalking Horse Bidder of the identity of any other Qualified Bidder. For the avoidance of doubt, the Stalking Horse Bidder is deemed to be a Qualified Bidder and the Stalking Horse Bid is deemed to be a Qualified Bid for all purposes.

- 15 -

**5.6.3**    If the Debtor receives at least one (1) Qualified Bid from a Qualified Bidder (other than the Stalking Horse Bidder) prior to the Bid Deadline, then the Debtor shall notify the Stalking Horse Bidder and each other Qualified Bidder that the Debtor intends to conduct the Auction Sale.  The Auction Sale hearing shall be held on a date selected by the court not later than 45 days or greater than 90 days after entry of the Confirmation Order in Courtroom 601 in the United States Bankruptcy Court for the District of Arizona, 230 North First Avenue, Phoenix, AZ 85003.  Each Qualified Bidder participating at the Auction Sale will be required to confirm that (a) it has not engaged in any collusion with respect to the bidding or the sale and (b) its Qualified Bid does not contain any due diligence contingency.  The Auction Sale will be conducted openly, and any party in interest will be permitted to attend.

**5.6.4**    Only the Stalking Horse Bidder and other Qualified Bidders may bid at the Auction.  Copies of all Qualified Bids shall be provided to Plan Proponent, the Stalking Horse Bidder and each other Qualified Bidder by no later than one (1) business day prior to the Auction. At the commencement of the Auction Sale, the Debtor and Plan Proponent shall identify the bid that they have determined to be the highest and/or best offer and shall permit the Stalking Horse Bidder and other Qualified Bidders to submit higher and/or better bids.  Each subsequent bid must exceed the amount of the preceding bid by not less than $50,000 and shall not be modified in a manner that causes it no longer to be a Qualified Bid.

**5.6.5**    The Court will supervise the bidding process and conduct the Auction Sale in such a manner as to provide the Stalking Horse Bidder and other Qualified Bidders a full, fair and equal opportunity to participate in the Auction.  The Court, after hearing from the Debtor and Plan Proponent, shall (i) determine which Qualified Bid is the highest and/or best bid and (ii) authorize the Debtor to consummate the sale of the Motel to such proposed Winning Bidder.

**5.6.6** If the Debtor does not receive at least one (1) Qualified Bid from a Qualified Bidder other than the Stalking Horse Bidder, then no Auction Sale shall be conducted; and the Court at the Auction Sale hearing shall solely consider the approval of the sale of the Motel to the Stalking Horse Bidder and not any competing or alternative offers or proposals to purchase the Motel.

**5.6.7** If the Debtor receives at least one (1) Qualified Bid from a Qualified Bidder other than the Stalking Horse Bidder, then the Auction Sale shall be conducted; and the Court at the Auction Sale Hearing shall determine the Winning Bidder, approve the Back-Up Bidder, if necessary, and consider approval of the sale of the Motel to the Winning Bidder.

**5.6.8** Upon approval by the Court of a Winning Bidder other than the Stalking Horse Bidder, the Bid Deposit of such Winning Bidder shall become non-refundable if the purchase agreement of such Winning Bidder is thereafter terminated by the Debtor as a result of a breach by the Winning Bidder of its obligations thereunder. If the Back-Up Bidder is a Qualified Bidder other than the Stalking Horse Bidder, then the Bid Deposit of the Back-Up Bidder shall remain on deposit in the Segregated Account pending the closing of the sale, and such deposit shall become non-refundable if the Back-Up Bidder becomes the proposed Winning Bidder and its purchase agreement is thereafter terminated by the Debtor as a result of a breach by such Back-Up Bidder. If a dispute arises over whether a Bid Deposit is refundable or non-refundable, the Bid Deposit shall remain in the Segregated Account pending a determination of the dispute by the Court or written agreement of the parties.

**5.6.9** If the Stalking Horse Bidder becomes the Winning Bidder, but the purchase agreement is terminated pursuant to its terms by the Debtor as a result of a breach by the Stalking Horse Bidder of its obligations thereunder, the Stalking Horse Bidder shall forfeit its Deposit. If a

Qualified Bidder other than the Stalking Horse Bidder becomes the proposed Winning Bidder, but the purchase agreement of such bidder is terminated pursuant to its terms by the Debtor as a result of a breach by the proposed Winning Bidder of any of its obligations thereunder, such bidder shall forfeit its Bid Deposit. In either case, the forfeiture of the Deposit or the Bid Deposit, as the case may be, shall constitute liquidated damages and the Debtor shall retain no other rights, remedies, claims, counterclaims and defenses against the Stalking Horse Bidder or such other Qualified Bidder, as applicable.

**5.6.10** Upon the earlier of either (i) the termination of Ranjit Singh's employment by the Liquidating Agent; (ii) order of the court terminating Ranjit Singh's employment, compensation, and/or residency at the Motel; or (iii) completion of the Motel sale, any and all compensation of any kind being paid by the Debtor to Ranjit Singh shall cease, and Ranjit Singh shall vacate any portion of the Motel which he is occupying. Upon the completion of the Motel Sale, the Debtor shall wind-up its operations.

**5.7 <u>Preservation and Disposition of Estate Claims.</u>** The Debtor shall retain any and all Estate Claims. In accordance with Bankruptcy Code §1123(b)(3)(B), all of the Debtor's Estate Claims will survive the entry of the Confirmation Order and the Effective Date; they will not be discharged by the Plan; and they will become and remain Property of the Debtor after the Effective Date.

The Auditor shall complete the Examination, and the Liquidating Agent shall review and consider it in determining whether there are any Estate Claims identified therein. Except as the Equity Interest holders otherwise agree and instruct the Liquidating Agent in writing, the Liquidating Agent shall have the right to further investigate the Estate Claims as and to the extent reasonably necessary and shall be authorized to retain litigation counsel to prosecute such Estate

Claims as it deems appropriate. (The amount of any reasonable legal fees and expenses incurred by the Liquidating Agent on or after the Effective Date shall be paid from funds remaining after the payment of all Allowed Claims in Classes 1 through 4.) The Liquidating Agent also shall have the power to settle or abandon Estate Claims. Notwithstanding the foregoing or anything to the contrary contained herein, the prosecution, settlement, or abandonment of any Estate Claim shall be done in consultation with the Equity Interest Holders; provided, however, that with respect to an Estate Claim against an Equity Interest holder, such Equity Interest holder shall not be consulted with respect to the prosecution or settlement of that claim. In the event of a disagreement between the Liquidating Agent and the consulted Equity Interest holder(s), the latter's decision shall control.

Nothing contained herein is intended to address any claims that Mrs. Singh or Ranjit Singh has in his/her personal capacity against the other (the "Individual Claims"), including (without limitation) any direct claims that either may have in connection with the operation of the Debtor or its financial affairs. On the contrary, any Individual Claims belong to the individual Singh claimant and shall be addressed in the Divorce Action.

Upon a determination that the Estate Claims will be handled by the Liquidating Agent and the Individual Claims between Mrs. Singh and Ranjit Singh will be handled in the Divorce Action, the State Court Action shall be dismissed.

After the Plan has been fully consummated and the processing of Estate Claims has been completed, the Equity Holders shall dissolve the Debtor or take such other action to wrap up or conclude its corporate existence as they agree.

### ARTICLE VI:  CONFIRMATION

**6.1 <u>Confirmation by Non-Acceptance Method</u>**

The Plan Proponent hereby requests, if necessary, confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code with respect to any impaired Class of Claims that does not vote to accept the Plan.

**6.2 <u>Binding Effect Of Plan</u>**

When confirmed, the provisions of the Plan shall bind the Debtor and any person or entity holding a Claim against the Debtor and its Estate, whether asserted or non-asserted, and any person asserting an interest in the Debtor, whether or not a Claim or Interest of such person or entity arose before or after the Petition Date or the Effective Date, whether or not the Claim or Interest is impaired under the Plan, and whether or not such person or entity has accepted the Plan.

**6.3 <u>Effect Of Confirmation</u>**

Except as otherwise provided herein, the rights afforded in the Plan shall be in exchange for and in complete satisfaction, discharge and release of all claims against the Debtor of any nature whatsoever. All such claims against the Debtor shall be satisfied, discharged and released in full. Except as otherwise provided herein, all holders of claims against the Debtor shall be precluded from asserting against the Debtor, its Estate, or the Property of the Debtor or its Estate any other or further claim based upon any omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date. No third party shall obtain the benefit of the discharge, and the injunctive relief barring suit against any co-Debtors shall not affect any co-Debtors' liability to creditors. This discharge shall be effective as to each claim, regardless of whether the claim is listed on the Debtor's Schedules filed in these Chapter 11 proceedings, whether a proof of claim was filed, whether such proof of claim was withdrawn, whether the claim is an Allowed Claim, in whole or in part, or whether the holder of the claim votes to accept or

- 20 -

reject the Plan. Upon the Effective Date, all the property of the Debtor will vest in the Debtor, which, subject to the obligation set forth in the Plan, may utilize the property free of any burdens of the Bankruptcy Code and without need to obtain Court approval of its actions.

**6.4 <u>Modification or Plan</u>**

The Plan may be modified in accordance with the provisions of the Bankruptcy Code and Chapter 11 as follows:

**1. <u>Pre-Confirmation</u>**

In accordance with Section 1127(a) of the Bankruptcy Code, the modification of the Plan may be proposed in writing by the Plan Proponent at any time before its Confirmation, provided that the Plan, as thus modified, meets the requirements of Sections 1122 and 1123 of the Code and the Proponent complies with Section 1125 of the Code.

**2. <u>Post-Confirmation</u>**

In accordance with Section 1127(b) of the Bankruptcy Code, the Plan also may be modified at any time after its Confirmation and before its substantial consummation, provided that the Plan as thus modified meets the requirements of Sections 1122 and 1123 of the Code, provided further that the circumstances then existing justify such modification and the Court confirms the Plan as thus modified under Section 1129 of the Code.

**3. <u>Objections</u>**

Any holder of a Claim or Interest that has accepted or rejected the Plan will be deemed to have accepted or rejected, as the case may be, the Plan as modified unless, within the time fixed by the Bankruptcy Court for doing so, such holder changes its previous acceptance or rejection.

**4. <u>Effect</u>**

Case 2:15-bk-15280-PS    Doc 474    Filed 03/19/19    Entered 03/20/19 08:01:13    Desc
Main Document    Page 29 of 36

Every modification of the Plan will supersede the previous version of the Plan as and when ever each modification is effective. When superseded, the previous version of the Plan will be in the nature of a withdrawn or rejected settlement proposal, and will be null, void and unusable by the Proponent or any other party for any purposes whatsoever with respect to any of the contents of such version of the Plan.

## ARTICLE VII: CLAIMS ADJUDICATION AND DISTRIBUTION

### 7.1. Preservation of Debtor's Claims, Demands, and Causes of Action

As discussed in Plan §5.7, the Debtor shall retain any and all Estate Claims. In accordance with Bankruptcy Code §1123(b)(3)(B), all of the Debtor's Estate Claims will survive the entry of the Confirmation Order and the Effective Date; they will not be discharged by the Plan; and they will become and remain Property of the Debtor after the Effective Date. The provisions of Plan §5.7 control the further handling and disposition of the Estate Claims.

### 7.2 Procedure for Determination of Claims

#### 1. Objections to Claims

Except as to any Claim that has been allowed prior to the Effective Date, no later than the last business day prior to the Effective Date, the Debtor, Plan Proponent, or any party in interest may object to the allowance of any Claim against the Debtor or seek estimation thereof on any Claim (including any Claim amounts stated in the Plan).

#### 2. Disputed Claims

No payments or other distributions will be made to holders of Claims unless and until such Claims are Allowed Claims pursuant to a Final Order. If a Claim is not an Allowed Claim by or on the Effective Date or when payment is otherwise due under the Plan, payment of the Allowed

Case 2:15-bk-15280-PS    Doc 474    Filed 03/19/19    Entered 03/20/19 08:01:13    Desc
Main Document    Page 30 of 36

Claim will be made when a Claim becomes an Allowed Claim after the Effective Date or as otherwise specifically provided in the Plan.

**7.3 <u>Provisions Governing Distributions</u>**

**1. <u>Distributions by Debtor</u>**

All Allowed Claims against the Debtor will be paid by the Debtor according to the Plan.

**2. <u>Delivery of Distributions</u>**

Subject to Bankruptcy Rule 9010, distributions and deliveries to each holder of an Allowed Claim will be made at the address of such holder as set forth on the respective Proof of Claim (or at the last known address of such holder if no Proof of Claim is Filed or if the Debtor has been notified of a change of address) as of the last business day prior to the Effective Date. If any holder's distribution is returned as undeliverable, no further distribution to such holder will be made unless and until the Debtor is notified of such holder's then current address, at which time all missed distributions will be made to such holder without interest. The Debtor will be under no obligation to attempt to locate the holder of any Allowed Claim or to recognize any purported transfer or encumbrance on the rights of holders of Allowed Claims after the Confirmation Date. Amounts of undeliverable distributions attempted by the Debtor will be retained by the Debtor until such distributions are claimed or become unclaimed property. All Claims for undeliverable distributions will be made on or before sixty (60) days following the first anniversary of the Effective Date. After such date, all unclaimed property will revert to and become the property of the Debtor.

**3. <u>Means of Payment</u>**

Payments made to holders of Allowed Claims pursuant to the Plan will be in United States Dollars by checks drawn on the domestic bank selected by the Debtor, or by wire transfer from a domestic bank, at the option of the Debtor.

**4. Interest**

Whenever interest is to be computed under the Plan, interest will be simple interest and not compounded. Unless otherwise specifically provided for in the Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim will be entitled to interest accruing on or after the applicable Petition Date on any Claim.

**5. Extension of Payment Dates**

If any payment date falls due on any day that is not a Business Day, then such due date will be extended to the next Business Day.

## ARTICLE VIII:  GENERAL PROVISIONS

**A.     Notices**

Any notice required or permitted to be provided under the Plan will be in writing and served by regular postage prepaid first-class mail, hand-delivery, facsimile, or e-mail.

**B.     General Injunction**

Except as otherwise expressly provided in the Plan, the Confirmation Order shall provide, among other things, that all parties-in-interest who have held, hold, or may hold Claims  against the Debtor are permanently enjoined on and after the Effective Date from: (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim against the Debtor or any successor-in-interest of the Debtor, against property of the Debtor,

- 24 -

or against property of any successor-in-interest of the Debtor; (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or any successor-in-interest of the Debtor, property of the Debtor, or against property of any successor-in-interest of the Debtor with respect to any such Claim; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or any successor-in-interest of the Debtor, against property of the Debtor, or against property of any successor-in-interest of the Debtor with respect to any such Claim; ( d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor or any successor-in· interest of the Debtor, against property of the Debtor, or against property of any successor-in-interest of the Debtor, with respect to any such Claim; (e) conducting any form of discovery from the Debtor with respect to any such Claim, or any successor-in-interest of the Debtor; and/or (f) harassing the Debtor or any successor-in-interest of the Debtor.

Notwithstanding the foregoing or anything to the contrary contained herein, nothing shall stay or prevent the continuance of the Divorce Action.

**C.**  **<u>Vesting</u>**

As of the Effective Date, and except as otherwise provided in the Plan, the Debtor shall retain and be vested with all of the Property of the Estate. All Property retained shall be free and clear of all liens, claims, and interest of creditors and parties-in-interest, except as specifically provided in the Plan.

**D.**  **<u>Successors and Assigns</u>**

The rights and obligations of any Creditor or other party-in-interest referred to in the Plan will be binding upon, and will inure to the benefit of, the successors, assigns, heirs, devisees, executors, and personal representatives of such Creditor or party-in-interest.

- 25 -

**E.    Withdrawal of Plan**

The Plan may be withdrawn or revoked by the Plan Proponent at any time before entry of the Confirmation Order.

**F.    Severability and Reformation**

It is the intention of Plan Proponent to comply fully with the Bankruptcy Code and applicable non-bankruptcy law in proposing the Plan. Therefore, if any provision of the Plan is determined by the Bankruptcy Court to be contrary to the Bankruptcy Code or applicable non-bankruptcy law, that provision will be deemed severed and automatically deleted from the Plan, if it cannot be reformed or the provision or its interpretation will be deemed reformed to ensure compliance; provided, however, that nothing contained in this paragraph will prevent the Plan Proponent from modifying the Plan in any manner whatsoever in accordance with and as set forth in the Plan. Pursuant to any ruling by the Bankruptcy Court regarding the subject matter of this paragraph, any such severance or reformation will be stated specifically in the Confirmation Order, which then will control notwithstanding any contrary or inconsistent provisions of the Plan.

**G.    Payment of Statutory Fees and Filing of Quarterly Reports**

All fees payable pursuant to 28 U.S.C. § 1980, as determined by the Bankruptcy Court at or in conjunction with the Confirmation Hearing, will be paid on or before the Effective Date and, thereafter, in accordance with applicable bankruptcy law. All quarterly reports of disbursements required to be filed by applicable bankruptcy law will be filed in accordance with applicable bankruptcy law.

**H.    Governing Law**

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, construed, and enforced in accordance with, and

- 26 -

subject to, the laws of the State of Arizona, excluding any laws that result in the application of the laws of another jurisdiction. Notwithstanding the foregoing or anything to the contrary contained herein, the relative ownership interests of the stockholders in the Debtor shall be determined in accordance with applicable non-bankruptcy law, including the law of their marital domicile, British Columbia, Canada.

**I.**     **Conflicts Between Plan and Confirmation Order**

In the event the terms of the Plan and the Confirmation Order conflict, the terms of the Confirmation Order shall govern.

**J.**     **Retention of Jurisdiction**.

After the Effective Date, the Bankruptcy Court shall retain and have exclusive jurisdiction over the Bankruptcy Case for the following purposes:

(a)     To determine any and all objections to the allowance of Claims;

(b)     To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or this Plan;

(c)     To determine any applications for the rejection or assumption of Executory contracts or unexpired leases or for the assumption and assignment, as the case may be, of Executory contracts or unexpired leases to which Debtor is a party or with respect to which Debtor may be liable, and to hear and determine, and if need be, to liquidate any and all Claims arising therefrom;

(d)     To determine any and all applications, adversary proceedings and contested or litigated matters pending on the Effective Date;

(e)     To consider any modifications of this Plan, remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(f)     To determine any and all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of this Plan or any person's or entity's obligations thereunder;

- 27 -

(g)     To determine all controversies, suits and disputes arising as a result of a demand by any utility for a deposit or other form of security as a condition to providing post-confirmation utility services to Debtor;

(h)     To determine all controversies, suits and disputes of this Plan as a result of discriminatory treatment of Debtor;

(i)     To hear and determine any claim or cause of action by or against Debtor, and to consider and act on the compromise and settlement of any claim or cause of action by or against Debtor;

(j)     To issue such orders in aid of execution of this Plan, as are authorized by § 1142 of the Bankruptcy Code;

(k)     To determine such other matters as may be set forth in the Confirmation Order or as may arise in connection with this Plan or the Confirmation Order; and

(l)     To interpret Orders entered in this case during its administration and confirmation of the Plan.

Nothing in this retention of jurisdiction shall prevent the Court from entering an order of Final Decree when performance under this Plan has been substantially consummated.

Dated as of August 16, 2016

SCHNEIDER & ONOFRY, P.C.

By   /s/ *Brian N. Spector*
Brian N. Spector
3101 N. Central Avenue, Suite 600
Phoenix, Arizona  85012-2658
Attorneys for Plan Proponent Sawaranjit Sarah Singh

ALVAREZ & GILBERT, P.L.L.C.

By   /s/ *John T. Gilbert*
John T. Gilbert
Alvarez & Gilbert, P.L.L.C.
14500 N. Northsight Blvd., Suite 216
Scottsdale, AZ  85260
Attorneys for Plan Proponent Sawaranjit Sarah Singh

- 28 -